UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| RICHARD J. ISOLDE, Individually and on Behalf of All Others Similarly Situated, | § § § | Civil Action No. 3:15-cv-02093-K **(CONSOLIDATED)** |
| Plaintiff, | § § § | CLASS ACTION |
| vs. | § § | Judge Ed Kinkeade |
| TRINITY INDUSTRIES, INC., et al., | § § § | |
| Defendants. | § § § | |

**LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY**

1156887_1

**TABLE OF CONTENTS**

**Page**

I.     PRELIMINARY STATEMENT ..................................................................................1

II.    RELEVANT PROCEDURAL BACKGROUND.............................................................3

III.   ARGUMENT ..............................................................................................................4

      A.     Plaintiffs and the Class Will Be Prejudiced by a Stay ...........................................4

      B.     Defendants Have Not Demonstrated a "Clear Case of Hardship or
           Inequity" ...............................................................................................................6

      C.     There Are No "Judicial Efficiencies" to Be Gained by a Stay ...............................9

IV.   CONCLUSION........................................................................................................10

1156887_1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Ambato Media, LLC v. Clarion Co.*,
2012 U.S. Dist. LEXIS 7558 (E.D. Tex. Jan. 23, 2012)....................................................6

*Col. River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976)........................................................................................................4

*D'Angelo v. Pintado*,
2009 U.S. Dist. LEXIS 118914 (E.D. La. Dec. 2, 2009)..............................................5

*Greco v. NFL*,
116 F. Supp. 3d 744 (N.D. Tex. 2015) ......................................................................10

*Hernandez v. Fincher*,
2005 U.S. Dist. LEXIS 7694 (N.D. Tex. Apr. 29, 2005) ...........................................5

*In re AWECO, Inc.*,
725 F.2d 293 (5th Cir. 1984) .....................................................................................5

*In re Ramu Corp.*,
903 F.2d 312 (5th Cir. 1990) .....................................................................................4

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)....................................................................................................1, 4

*Lewis v. City of Garland*,
2005 U.S. Dist. LEXIS 23855 (N.D. Tex. Oct. 14, 2005) ..........................................5

*ROI Grp., Inc. v. Stull*,
2016 U.S. Dist. LEXIS 64529 (N.D. Tex. May 17, 2016) ......................................4, 6

*Supermedia Inc. v. Bell*,
2012 U.S. Dist. LEXIS 158133 (N.D. Tex. Nov. 2, 2012)....................................1, 4, 6

*United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*,
571 F. Supp. 2d 758 (W.D. Tex. 2008).......................................................................5

*United States ex rel. Joshua Harman v. Trinity Industries, Inc.*,
2:12-cv-0089-JRG (E.D. Tex.) ......................................................................... *passim*

*United States v. Range Production Co.*,
793 F. Supp. 2d 814 (N.D. Tex. 2011) .......................................................................9

*Vantage Point Tech., Inc. v. Amazon.com, Inc.*,
2015 U.S. Dist. LEXIS 675 (E.D. Tex. Jan. 6, 2015)..................................................5

- ii -

**Page**

*Wedgeworth v. Fibreboard Corp.*,
    706 F.2d 541 (5th Cir. 1983) ........................................................................................1, 4

**STATUTES, RULES AND REGULATIONS**

Federal Rule of Civil Procedure
    Rule 15 .................................................................................................................................8

1156887_1

Lead Plaintiffs Plumbers and Pipefitters National Pension Fund ("Plumbers and Pipefitters"), United Association Local Union Officers & Employees' Pension Fund (the "UA Fund") and the Department of the Treasury of the State of New Jersey and its Division of Investment ("New Jersey") (collectively, "Plaintiffs") respectfully submit this memorandum of law in opposition to the Motion to Stay and Administratively Close Proceedings Pending Fifth Circuit Appeal (Dkt. No. 112) (the "Motion"), filed on behalf of Defendants Trinity Industries, Inc. ("Trinity"), Timothy R. Wallace, James E. Perry, and Gregory B. Mitchell (collectively, "Defendants").[1]

## I.    PRELIMINARY STATEMENT

Defendants' Motion provides no justification for their request to indefinitely stay this case, which was commenced *more than a year ago* and has yet to garner any substantive response from Defendants.  Defendants' assertions are premised on a blatant misrepresentation of Plaintiffs' position concerning the possibility of a future amendment to the Complaint, are belied by Defendants' own previous arguments to this Court, and ignore the undeniable prejudice Plaintiffs would suffer from any stay.[2]  Defendants have failed to satisfy their heavy burden of demonstrating "a *clear case of hardship or inequity* in being required to go forward [with the present litigation]," and their Motion should be denied.  *See Supermedia Inc. v. Bell*, 2012 U.S. Dist. LEXIS 158133, at *5 (N.D. Tex. Nov. 2, 2012) (emphasis added) (citing *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)).

As an initial matter, Defendants' bald assertion that it is "clear from . . . discussions with counsel for the Lead Plaintiffs" that Plaintiffs "want to . . . amend again following a decision of the Fifth Circuit in the Harman Case" is *patently false*.  (*See* Motion at 2, 6.)  To the contrary, Plaintiffs have expressly stated in correspondence with Defendants' counsel that "[Plaintiffs] currently have no expectation of amending the Complaint."  (*See* Dkt. No. 117-2.)

---

[1]    Unless otherwise noted, all "Dkt. No." references herein refer to entries on the ECF docket in the present action.

[2]    All references herein to the "Complaint" refer to Plaintiffs' Consolidated Complaint for Violations of the Federal Securities Laws (Dkt. No. 108) (the "Complaint").

- 1 -

Nor is there any other basis for Defendants' assertion that the Complaint "is likely to be amended" based upon the Fifth Circuit's ruling in the *Harman* Appeal.[3]  (*See* Motion at 1, 6.) Indeed, Defendants' Motion does not even attempt to articulate how or why the outcome of the *Harman* Appeal is "likely" to warrant an amendment of the ***facts*** alleged in the Complaint. Defendants' failure to do so is not surprising, however, as the Fifth Circuit's ruling in the *Harman* Appeal will focus on the claims and misrepresentations specific to that case – which, as Defendants have previously argued to this Court, are simply ***not at issue here***.  (*See*, *e.g.*, Dkt. No. 49 at 11-13) (setting forth Defendants' argument that "[t]he Harman Case and the [present action] do ***not*** involve the same claims or alleged misrepresentations") (emphasis added).

Defendants' Motion attempts to create the illusion that Plaintiffs' claims are "tie[d]" to the outcome of the *Harman* Appeal, but their assertions are contrary to Defendants' own previous argument – which they now attempt to ignore – that "[t]he Harman Case rests on ***completely different claims and facts*** than the [present action]."  (*Id.* at 5) (emphasis added).  Moreover, Defendants' misleading assertion that "virtually every page [of the Complaint] references the *Harman* Case in some way" does not create a ***legal*** connection between the two cases.  (*See*, *e.g.*, Motion at 1, 3-4.)  In fact, Defendants themselves have previously opposed similar attempts to tie this action to the *Harman* Case, specifically arguing to this Court: "Notwithstanding the ***number of times*** that the Harman Case is cited by [Plaintiffs], the Harman Case and the [present case] are ***not*** overlapping."  (Dkt. No. 49 at 13) (first emphasis added).

Moreover, Plaintiffs and the Class will suffer substantial prejudice if Defendants' request for an indefinite stay is granted.  This case is already more than a year old.  If a stay is imposed, the underlying facts will continue to age, memories will fade, documents will be lost or destroyed, and Plaintiffs' ability to prove their claims will be negatively impacted in a material way.  This is particularly true given the uncertain – but unquestionably significant – amount of time for which

---

[3]   All references herein to the "*Harman* Appeal" refer to Trinity's appeal of the judgment entered by the United States District Court for the Eastern District of Texas in the federal False Claims Act *qui tam* action, *United States ex rel. Joshua Harman v. Trinity Industries, Inc.*, 2:12-cv-0089-JRG (E.D. Tex.) (the "*Harman* Case"), which is pending, but not yet fully briefed, in the United States Court of Appeals for the Fifth Circuit.

1156887_1

Defendants' Motion seeks to stay the present action. Accordingly, Plaintiffs have a significant interest in avoiding any further delay of their efforts to seek recompense for damages suffered as a result of Defendants' fraud.

In short, Defendants have provided no valid justification for putting Plaintiffs' claims indefinitely on hold while the parties await the Fifth Circuit's ruling in a case that Defendants themselves have described as "rest[ing] on ***completely different claims and facts*** than the [present action]." (*See* Dkt. No. 49 at 5) (emphasis added). Indeed, no such justification exists, and Defendants' Motion should be denied.

## II.   RELEVANT PROCEDURAL BACKGROUND

Final judgment was entered in the *Harman* Case on June 9, 2015. (*See Harman Case*, Dkt. No. 713.) Shortly thereafter, on June 19, 2015, this action was commenced. (*See* Dkt. No. 1.) Contrary to Defendants' suggestions, the original complaint filed at that time made repeated references to the *Harman* Case. (*See, e.g.*, *id.* at ¶¶36, 38, 40, 48, 50-51, 56, 59.) On August 28, 2015, Trinity filed its notice of appeal in the *Harman* Case. (*See Harman Case*, Dkt. No. 732.) Defendants did not move to stay this case at that time.

On March 8, 2016, the Court entered an order appointing Plumbers and Pipefitters, the UA Fund and New Jersey as Lead Plaintiffs. (Dkt. No. 97.) Shortly thereafter, the parties negotiated a briefing schedule concerning Plaintiffs' filing of the Complaint, and Defendants' response thereto. (Dkt. No. 100.) At no point during those negotiations did Defendants mention the possibility of any intention to seek a stay of the case. The parties' agreed-upon schedule was ordered by the Court on March 22, 2016. (Dkt No. 107) (the "Schedule"). Pursuant to the Schedule, the Complaint was filed on May 11, 2016. (Dkt. No. 108.) As discussed in detail in Plaintiffs' June 17, 2016 Opposition to Defendants' Emergency Motion to Postpone Defendants' Responsive Deadline and Request for Expedited Briefing, Defendants thereafter engaged in a series of actions that reflect a strategy to unnecessarily delay this litigation. (*See* Dkt. No. 116 at 2-4.)

As Defendants note in their Motion, the *Harman* Appeal is currently pending before the Fifth Circuit, but it is not yet fully briefed, the oral argument date has not yet been scheduled, and

"Defendants do not know the exact timetable for a Fifth Circuit decision in the Harman Case." (*See* Motion at 7 n.3.)  Trinity's opening brief in the *Harman* Appeal was filed on March 21, 2016 – nearly three months prior to the filing of Defendants' Motion – and the appellee's brief was recently filed on June 9, 2016.

## III.   ARGUMENT

It is well established that Defendants "'must make out a ***clear case of hardship or inequity*** in being required to go forward, if there is even a fair possibility that the stay for which [they] pray[] will work damage to someone else.'"  *See Supermedia*, 2012 U.S. Dist. LEXIS 158133, at \*4-\*5 (emphasis added) (citing *Wedgeworth*, 706 F.2d at 545 (quoting *Landis*, 299 U.S. at 255)).  Where the requested stay is based on the existence of another pending federal court action, the principle behind granting such a request is typically "'to avoid duplicative litigation.'"  *Id.* at \*5 (citing *Col. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).  In addition, the Fifth Circuit has recognized that "a discretionary stay must not be 'immoderate or of an indefinite duration.'"  *ROI Grp., Inc. v. Stull*, 2016 U.S. Dist. LEXIS 64529, at \*5-\*6 (N.D. Tex. May 17, 2016) (citing *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990)).

Here, as detailed below, any stay of the proceedings will unquestionably "work damage" to Plaintiffs, and Defendants have fallen woefully short of "mak[ing] out a clear case of hardship or inequity in being required to go forward."  *Supermedia*, 2012 U.S. Dist. LEXIS 158133, at \*4-\*5.  Moreover, as Defendants have previously argued, "[t]he Harman Case rests on ***completely different claims and facts*** than the [present action]." (Dkt. No. 49 at 5) (emphasis added).  As such, unlike in the cases Defendants rely on, here there is no risk of "duplicative litigation" absent a stay, and there are no judicial economies to be gained by imposing a stay.  *Supermedia*, 2012 U.S. Dist. LEXIS 158133, at \*5.

### A.   Plaintiffs and the Class Will Be Prejudiced by a Stay

Defendants' conclusory and self-serving assertion that "no party will suffer prejudice" from a stay is incorrect.  (*See* Motion at 7.)  Indeed, Plaintiffs and the Class have a strong interest in expeditiously proceeding with their efforts to obtain recompense for damages occasioned to them by

Defendants' fraud.  *See, e.g.*, *United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 571 F. Supp. 2d 758, 763 (W.D. Tex. 2008) ("'[T]he compensation and remedy due a civil plaintiff should not be delayed.'  Plaintiffs have a legitimate interest in the expeditious resolution of their case.") (citation omitted); *D'Angelo v. Pintado*, 2009 U.S. Dist. LEXIS 118914, at \*7 (E.D. La. Dec. 2, 2009) (same).  As courts have long-recognized, "***justice delayed is justice denied***."  *In re AWECO, Inc.*, 725 F.2d 293, 299 (5th Cir. 1984) (emphasis added); *see also, e.g.*, *Vantage Point Tech., Inc. v. Amazon.com, Inc.*, 2015 U.S. Dist. LEXIS 675, at \*15-\*16 (E.D. Tex. Jan. 6, 2015) ("The maxim that 'justice delayed is justice denied' is no less true today than when it was first uttered." (citation omitted)).

In addition, Plaintiffs' ability to effectively litigate their claims – which have already been on file for more than a year – will be significantly prejudiced by any further delays, which will necessarily increase the likelihood of lost evidence due to issues such as witness unavailability, witness memory loss, and document loss or destruction.  *See*, *e.g.*, *Hernandez v. Fincher*, 2005 U.S. Dist. LEXIS 7694, at \*7 (N.D. Tex. Apr. 29, 2005) ("Plaintiffs have a significant interest in proceeding expeditiously to avoid problems with witness availability and memory loss."); *Lewis v. City of Garland*, 2005 U.S. Dist. LEXIS 23855, at \*10-\*11 (N.D. Tex. Oct. 14, 2005) ("Generally, a 'civil plaintiff has an interest in the prompt resolution of [her] claims and in obtaining discovery while information is still fresh in witnesses' minds.'" (quotation omitted)).  In other words, far from promoting judicial economy, the stay that Defendants seek would likely result in a substantially less reliable evidentiary record in this action than would otherwise be the case.

These harms are particularly heightened given the uncertain – but unquestionably significant – amount of time for which Defendants seek to stay Plaintiffs' claims.  Defendants admit they "do not know the exact timetable for a Fifth Circuit decision in the Harman Case," but only posit that "oral argument will likely by heard this fall."  (Motion at 7 & n.3.)  But even if Defendants' assumption proves correct, it will likely be many more months after oral argument before any ruling is issued in the *Harman* Appeal.  As such, a decision is not likely to be issued until sometime in 2017 – or roughly ***two years after this action was first commenced***.  Moreover, regardless of the

outcome, the *Harman* Appeal is unlikely to provide a final resolution in the *Harman* Case, with the losing party likely to seek a rehearing *en banc* or review by the Supreme Court (or both) – not to mention the possibility of further district court proceedings in the event of a remand.  As a result, the *Harman* Case may require **several additional years of proceedings** before a final adjudication is achieved.  The likelihood of such a lengthy – and indefinite – delay weighs heavily against granting Defendants' request.  *See ROI Grp.*, 2016 U.S. Dist. LEXIS 64529, at *6 ("a discretionary stay must not be 'immoderate or of an indefinite duration'" (quotation omitted)).[4]

**B.     Defendants Have Not Demonstrated a "Clear Case of Hardship or Inequity"**

Defendants' Motion does not articulate **any** particular "hardship" or "inequity" that they will be forced to endure if the case proceeds.  (*See* Motion at 5-7.)  Instead, Defendants simply speculate that proceeding with the case may require them to "waste time briefing and determining the sufficiency of [Plaintiffs'] claims when the very claims this Court and the parties will be debating will likely be amended by Lead Plaintiffs."  (Motion at 6.)  Defendants' hypothetical concern falls well short of constituting a "clear case of hardship or inequity." *Supermedia*, 2012 U.S. Dist. LEXIS 158133, at *5; *see also Ambato Media, LLC v. Clarion Co.*, 2012 U.S. Dist. LEXIS 7558, at *6 (E.D. Tex. Jan. 23, 2012) ("[e]ven though some of the claims may change . . . 'the interests of justice will be better served by dealing with that contingency when and if it occurs, rather than putting this case indefinitely on hold'" (quotation omitted)).  Moreover, Defendants' assumption that the Complaint will "likely be amended" is logically flawed and misrepresents Plaintiffs' stated position. (Motion at 6.)

Contrary to Defendants' repeated misrepresentations, Plaintiffs have **never** indicated a desire or intention to amend the Complaint based on the outcome of the *Harman* Appeal.  (*See* Motion at 2, 6.)  In fact, Plaintiffs have told Defendants unambiguously that "[Plaintiffs] currently **have no**

---

[4]    Defendants' alternative request that Plaintiffs' claims be stayed for seven months (Motion at 7 n.3) is no more appropriate, as this request is also unquestionably "immoderate" and will similarly prejudice Plaintiffs' attempt to obtain recovery for their damages.  Moreover, the arbitrary nature of Defendants' seven-month request only further confirms Defendants' true motivation in connection with their Motion: to delay this litigation as long as possible.

- 6 -

*expectation of amending the Complaint*."   (Dkt. No. 117-2) (emphasis added).[5]   As such,

Defendants' bald assertion that Plaintiffs have indicated that they "*want to* . . . amend their

Consolidated Complaint following the Fifth Circuit determination of the Harman Case" is

*objectively false*.  (Motion at 6) (emphasis added).

Moreover, Defendants do not even attempt to articulate how or why the outcome of the

*Harman* Appeal is "likely" to warrant an amendment of the *facts* set forth in the Complaint – nor can

they.  Although it is true that certain of the Complaint's factual allegations are drawn from the record

(*e.g.*, documents and testimony) in the *Harman* Case, the Fifth Circuit's ruling will not alter that

underlying factual record.  Instead, the ruling in the *Harman* Appeal will address *legal issues*

concerning the claims and misrepresentations at issue in that case – legal issues that Defendants have

previously told this Court are not present in this case.  (*See*, *e.g.*, Dkt. No. 49 at 12 ("[t]he Harman

Case and the [present action] do *not* involve the same claims or alleged misrepresentations")

(emphasis added)).  In other words, since the Fifth Circuit's ruling cannot change the facts at issue,

Defendants cannot credibly maintain that the *Harman* Appeal will "likely" result in an amendment.

Defendants instead rely on artificial efforts to create the illusion that Plaintiffs' claims are

"tie[d]" to the outcome of the *Harman* Appeal.  (Motion at 5-6.)  But these efforts are each

unavailing.  First, Defendants' assertion that "[v]irtually every page of the Consolidated Complaint

makes repeated reference to the Harman Case" is misleading and irrelevant.  (*Id.* at 5.)  Indeed,

Defendants themselves have previously urged the Court to reject this exact position, specifically

arguing that the two cases "are *not* overlapping," "*[n]otwithstanding the number of times* that the

Harman Case is cited by [Plaintiffs]."  (*See* Dkt. No. 49 at 13) (emphasis added).

---

[5]   This position was only offered in response to Defendants' request that Plaintiffs agree, at this time, to waive all of their future rights to seek leave to amend the Complaint following the Fifth Circuit's ruling.  (Dkt. No. 117-2).  Although Plaintiffs also reserved their rights by stating that "[Plaintiffs] cannot agree in advance to waive the Class's right to seek an amendment based on future events that [Plaintiffs] have no control over" (*id.*), this eminently reasonable reservation of rights is *not* tantamount to an *intention* to amend the Complaint, as Defendants incorrectly suggest. (Motion at 2, 6.)  Indeed, no responsible party could possibly agree to the uncertain advanced waiver requested by Defendants.

- 7 -

More importantly, Defendants' argument that the "central claims" in this case (*see* Motion at 6) are tied to the outcome of the *Harman* Appeal is wrong.  Although it is true that the Complaint alleges that Defendants made false representations concerning Trinity's financial exposure relating to potential liability arising from Trinity's secret modications to the ET-Plus (including in the *Harman* Case), the viability of Plaintiffs' claims does ***not*** depend on the Fifth Circuit's determination.  Instead, these claims depend on the ***facts*** that Defendants were aware of – but concealed or misrepresented – ***at the time the statements were made***.

Specifically, contrary to Defendants' suggestions, Plaintiffs do not allege that Defendants made false statements concerning the ultimate ***outcome*** of the *Harman* Case.  Rather, one aspect of the Complaint's allegations are that Defendants made false statements by failing to properly account for and disclose ***potential*** liabilities as required by Generally Accepted Accounting Principles (GAAP).  (*See* Complaint, ¶¶221-248.)[6]  Nothing the Fifth Circuit decides will ***retroactively*** bear on the falsity of those statements, many of which were made years before judgment in the *Harman* Case was rendered.  As such, the question of whether Defendants' accounting disclosures were materially false and misleading is a question of fact that cannot be resolved or prejudged by the outcome in the *Harman* Appeal.  Moreover, as Defendants have previously conceded to this Court, ***none*** of those statements are at issue in the *Harman* Case.  (*See* Dkt. No. 49 at 12.)

Lastly, even if Plaintiffs ultimately were to determine that an amendment to the Complaint was warranted due to some future development, the Federal Rules of Civil Procedure provide that any such amendment only would be permitted upon Defendants' written consent or by leave of the Court following an opportunity for Defendants to oppose Plaintiffs' request.  *See* Fed. R. Civ. P. 15. As such, Defendants cannot reasonably claim that they stand to suffer hardship or inequity if the case

---

[6] GAAP and SEC disclosure rules required Defendants to report significant risks and uncertainties and to account for potential litigation exposure by accruing reserves, even if the ultimately liability had not been realized.  (*See, e.g.*, Complaint, ¶225 ("The threshold for requiring ***disclosure*** of loss contingencies is exceedingly low. . . [A] loss contingency must be disclosed . . . if 'the chance of the future event or events occurring is ***more than remote but less than likely***.'")) (citation omitted).  The Complaint simply applies these principles to Trinity's Class Period financial disclosures.  (*See* Complaint, ¶¶ 202-203 (alleging falsity for failure to disclose the "exposure created by Trinity's fraudulent modifications to the ET-Plus"), 221 (alleging falsity for failure "to disclose the Company's litigation exposure and the expected negative financial impact to its business")).

is allowed to proceed, based on the hypothetical possibility that Plaintiffs may someday request leave to amend – a possibility that exists in *every case*, and is explicitly provided for in the Federal Rules.

### C.    There Are No "Judicial Efficiencies" to Be Gained by a Stay

Unlike the cases relied on by Defendants, the imposition of a stay here would ***not*** promote any "judicial efficiencies," because the outcome of the *Harman* Appeal will not resolve the nature or viability of any claims at issue in this case.  (*See* Motion at 5.)  This is so because, as Defendants have previously argued, the "[t]he Harman Case and the [present action] do ***not*** involve the same claims or alleged misrepresentations."  (Dkt. No. 49 at 12) (emphasis added).  This important fact distinguishes the present case from those relied on by Defendants.

For example, in *Inclusive Communities Project, Inc. v. The Texas Department of Housing and Community Affairs* – a case that Defendants' inaccurately describe as involving "similar circumstances" (Motion at 2-3) – Judge Fitzwater granted the defendants' request for a stay "pending the Supreme Court's disposition of [defendants'] petition for a writ of certiorari" ***in the same case***.  2014 U.S. Dist. LEXIS 84683, at *2 (N.D. Tex. June 23, 2014).  As Judge Fitzwater correctly recognized, the imposition of a stay in *Inclusive* was certain to promote judicial economy, given that the Supreme Court's resolution of the defendants' appeal ***in the very case sought to be stayed*** would necessarily have a controlling impact on the viability of plaintiff's claims.  (*See id*. at *7) ("If the Court grants [defendants'] petition and decides that such claims cannot be brought under the FHA, this court and the parties should not expend the resources necessary to litigate a claim ***that is not legally viable***." (emphasis added)).  Here, by contrast, there is no possibility that the Fifth Circuit's ruling in a case involving "completely different claims and facts" could arguably determine the viability of Plaintiffs' claims.  (*See* Dkt. No. 49 at 5 (emphasis added)).

Similarly, in *United States v. Range Production Co.*, the court entered a stay expressly because "the Fifth Circuit's pending decision [was likely to] . . . moot [the] action [sought to be stayed]," or at least resolve contested legal questions that would govern the litigation.  793 F. Supp. 2d 814, 824 (N.D. Tex. 2011).  Here, however, there is no possibility that the Fifth Circuit's ruling in

the *Harman* Appeal could arguably "moot this action" or resolve contested legal questions, given the inherent legal differences between the two cases.

Greco v. NFL is also inapposite. *See* 116 F. Supp. 3d 744 (N.D. Tex. 2015). Similar to *Inclusive* – and unlike the situation here – *Greco* involved a request to stay one action pending the resolution of an appeal of a related case "with ***nearly identical factual and legal issues***." 116 F. Supp. 3d at 761 (emphasis added). In fact, in *Greco*, there was "no dispute" among the parties as to whether there was an identity of issues between the two litigations. *Id.* at 747 n.1. In granting ***plaintiffs'*** request to stay the case, Judge Lynn noted that resolution of the related appeal would "very likely bear on this case," and further noted the substantial efficiencies to be gained by staying the *Greco* case given the complex nature of that litigation, which "involve[d] nearly 200 Plaintiffs, and [was scheduled to] proceed with time-consuming bellwether trials, the logistics and schedule for which [would] be complex." *Id.* Unlike *Greco*, this matter presents no particularly complex or time-consuming issues, is nowhere near the trial stage, and Defendants have articulated no reason why the outcome of the *Harman* Appeal is "likely [to] bear on this case." *Id.*

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Stay should be denied in its entirety.

DATED:  June 22, 2016                    Respectfully submitted,

KENDALL LAW GROUP, LLP
JOE KENDALL (State Bar No. 11260700)
JAMIE J. McKEY (State Bar No. 24045262)


                                           /s/ Joe Kendall
                                         JOE KENDALL

3232 McKinney Avenue, Suite 700
Dallas, TX  75204
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com
jmckey@kendalllawgroup.com

JACKSON WALKER LLP
DAVID FOLSOM (State Bar No. 07210800)
CHARLES L. BABCOCK (State Bar No. 01479500)
DAVID T. MORAN (State Bar No. 14419400)
KPMG Plaza at Hall Arts
2323 Ross Avenue, Suite 600
Dallas, TX  75201
Telephone:  214/953-6000
214/953-5822 (fax)
dfolsom@jw.com
cbabcock@jw.com
dmoran@jw.com

Co-Liaison Counsel for the Class

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS (Admitted *Pro Hac Vice*)
NATHAN R. LINDELL (Admitted *Pro Hac Vice*)
SARA B. POLYCHRON (Admitted *Pro Hac Vice*)
HILLARY B. STAKEM (Admitted *Pro Hac Vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
nlindell@rgrdlaw.com
spolychron@rgrdlaw.com
hstakem@rgrdlaw.com

LOWENSTEIN SANDLER LLP
MICHAEL B. HIMMEL (Admitted *Pro Hac Vice*)
MICHAEL T.G. LONG (Admitted *Pro Hac Vice*)
JAMIE GOTTLIEB FURIA (Admitted *Pro Hac Vice*)
JOSEPH A. FISCHETTI (Admitted *Pro Hac Vice*)
BRANDON M. FIERRO (Admitted *Pro Hac Vice*)
65 Livingston Avenue
Roseland, NJ  07068
Telephone:  973/597-2500
973/597-2400 (fax)
mhimmel@lowenstein.com
mlong@lowenstein.com
jfuria@ lowenstein.com
jfischetti@ lowenstein.com
bfierro@ lowenstein.com

- 11 -

BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP
JAMES A. HARROD (Admitted *Pro Hac Vice*)
ADAM HOLLANDER (Admitted *Pro Hac Vice*)
1251 Avenue of the Americas
New York, NY  10020
Telephone:  212/554-1400
212/554-1444 (fax)
jim.harrod@blbglaw.com
adam.hollander@blbglaw.com


Co-Lead Counsel for the Class


THE LAW OFFICE OF BALON B. BRADLEY
BALON B. BRADLEY (State Bar No. 02821700)
5473 Blair Road, Suite 100
Dallas, TX 75231
Telephone: 972/991-1582
972/755-0424 (fax)
balon@bbradleylaw.com


O'DONOGHUE & O'DONOGHUE LLP
LOUIS P. MALONE
4748 Wisconsin Avenue, N.W.
Washington, DC 20016
Telephone: 202/362-0041
202/362-2640 (fax)


Additional Counsel for Lead Plaintiffs Plumbers and
Pipefitters National Pension Fund and United
Association Local Union Officers & Employees'
Pension Fund

- 12 -

CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of June, 2016, a copy of the foregoing was served electronically and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

/s/ Joe Kendall
JOE KENDALL
