UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICHARD J. ISOLDE, Individually and on Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | Case No. 3:15-cv-02093-K |
| | § | ECF |
| v. | § § | Judge Ed Kinkeade |
| TRINITY INDUSTRIES, INC., TIMOTHY R. WALLACE, JAMES E. PERRY, and GREGORY B. MITCHELL, | § § § § | |
| Defendants. | § | |

**DEFENDANT GREGORY B. MITCHELL'S**
**REPLY IN RESPONSE TO PLAINTIFFS' OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT**

Yvette Ostolaza
State Bar No. 00784703
yvette.ostolaza@sidley.com
Angela C. Zambrano
State Bar No. 24003157
angela.zambrano@sidley.com
Michelle Hartmann
State Bar No. 24032402
mhartmann@sidley.com

SIDLEY AUSTIN LLP

2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Ph: (214) 981-3300
Fax: (214) 981-3400

*Attorneys for Defendants*
*Trinity Industries, Inc., Timothy R.*
*Wallace, James E. Perry, and*
*Gregory B. Mitchell*

Joshua L. Hedrick
State Bar No. 24061123
josh@hedrickkring.com

HEDRICK KRING, PLLC

1700 Pacific Avenue, Suite 4650
Dallas, Texas 75201
Phone: (214) 880-9605
Fax: (214) 481-1844

*Attorney for Defendant*
*Trinity Industries, Inc.*

## PRELIMINARY STATEMENT

In their opposition to the motion to dismiss (the Response), Plaintiffs concede that their entire securities fraud case against Mitchell, the president of Trinity *Highway Products*, is premised on a single quote within a press release issued by Trinity *Industries*.  But this quote cannot support a securities fraud case against Mitchell for at least three independent reasons.  First, Plaintiffs allege that the press release was issued by Trinity *Industries*, not Mitchell or Mitchell's employer Trinity *Highway Products*, and therefore Mitchell is not the "maker" of the alleged misstatement under established Supreme Court precedent.  Second, even if Plaintiffs could establish that Mitchell was the "maker," the statement attributed to him is a non-actionable, forward-looking opinion.  Finally, Plaintiffs fall well short of alleging with particularity the level of scienter necessary to meet the requirements of the PSLRA.  For all these reasons, the claims against Mitchell should be dismissed.

## ARGUMENTS AND AUTHORITIES

**1.     Mitchell was not the "maker" of any of the alleged misstatements.**

The Supreme Court stated in *Janus* that "[f]or purposes of Rule 10b-5, the maker of a statement is the person or entity *with ultimate authority over the statement*, including its content and whether and how to communicate it." *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) (emphasis added).  Plaintiffs do not and cannot dispute that the only statement at issue with regard to Mitchell was issued to investors of Trinity Industries by Trinity *Industries*, not by Trinity *Highway Products*.  As such, Mitchell—whom Plaintiffs acknowledge in their Complaint is not even an employee of Trinity Industries (Compl. ¶32)—did not have "ultimate authority" over a press release that was undisputedly made by Trinity Industries.  *Id.*; *see also Ho v. Duoyuan Global Water, Inc.*, 887 F. Supp. 2d 547, 576-77 (S.D.N.Y. 2012) ("A party does not have ultimate authority over a misstatement *just because it shares close business*

*ties or a similar corporate name with the party who made the misstatement*.") (emphasis added). Moreover, the Complaint lacks any allegations that Mitchell had any direct involvement in drafting or filing the Trinity Industries press release, much less any allegation that Mitchell had the requisite "ultimate authority" to decide "its content and whether and how to communicate" the press release, as is required by Supreme Court precedent. *Janus*, 564 U.S. at 142.

> A.     *Plaintiffs misconstrue the standard set forth by Janus.*

Plaintiffs contend that *Janus* does not prevent liability when statements can specifically be attributed to an individual. (Resp. 32-33.) But *Janus* does not define "maker" to mean the person to whom the statement can be attributed; rather, *Janus* holds that the "maker" of a statement is the person or entity with "ultimate authority over the statement." 564 U.S. at 142. Here, Trinity Industries, not Mitchell, is the "maker" as it is the entity that issued the October 24 press release—a fact that is undisputed in the Complaint. (*See* Compl. ¶ 147 ("On October 24, 2014, *Trinity* issued another press release . . . ."); ¶ 1 (defining "Trinity" as Defendant Trinity Industries, Inc.).)

Plaintiffs argue that a quote attributed to an individual within a larger communication to investors should automatically render the quoted individual a "maker" of that communication. But the Supreme Court in *Janus* rejects this approach and instead formulated a test requiring allegations of ultimate authority over the communication to render a person its "maker." Just because a person is involved with preparing one small portion of the content of a communication, does not mean that he is responsible for actually "making" the communication to investors. Even being "significantly involved" in the preparation of a communication is not enough to render a person its "maker" under *Janus*, which compared a speechwriter and a speaker to illustrate that a speechwriter is not a "maker" even if he wrote the entire speech—only the person who delivers it (*i.e.* the speaker) is the maker. 564 U.S. at 143 ("[I]t is the speaker

who takes the credit—or blame—for what is ultimately said.")  Thus, *Janus* teaches that there must  be specific allegations in a complaint that an individual had "ultimate authority" over  a communication to make that person its  maker.  More specifically, a maker of a communication must have ultimate authority over "its contents and whether and how to communicate it."  *Id*. at 142.  There are no such allegations in Plaintiffs' Complaint about Mitchell's involvement in editing or filing the press release or deciding how or when to provide the press release and its contents to investors.  Trinity Industries had ultimate authority over whether and when to provide the content.  Accordingly, Mitchell—whom Plaintiffs have not (and cannot) allege is authorized to speak for Trinity Industries—is not the maker of the statement under *Janus*, and the claims against him must fail.

The cases cited in the Response (Resp. 32-33) only serve to confirm that a maker of a statement must be "the person or entity with ultimate authority over the statement" and are easily distinguishable from the single Mitchell quote at issue here, as those cases contain detailed allegations of involvement and authority over the communications at issue—something completely lacking as to Mitchell in Plaintiffs' Complaint.  For example, in *Cotter v. Gwyn*, the court held that the defendant third-party administrator of a fund could be the maker of statements to investors because it was specifically alleged to have been "*responsible* for analyzing information . . . . and then *distributing* the results of that analysis to investors."  No. CV 15-4823, 2016 WL 4479510, at **10-11 (E.D. La. Aug. 25, 2016) (emphasis added).  The Court also noted that the defendant "was responsible for calculating [the fund's] net asset value and [plaintiff] specifically alleges that the net asset value was fraudulently inflated to mislead investors."  *Id*.  The allegations found in *Cotter* are absent here.  Plaintiffs do not allege that

Mitchell was responsible for distributing any information to Trinity Industries's shareholders or otherwise communicating with investors.

Similarly, in *In re Fannie Mae 2008 Securities Litigation,* (Resp. 33), the court declined to dismiss claims against a company's Chief Risk Officer, who allegedly made the SEC filings at issue, had a position on the disclosure committee, reviewed draft filings, and had individual discussions with another defendant about the SEC filings. 891 F. Supp. 2d 458, 473 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 16 (2d Cir. 2013). Again, this case clearly is distinguishable as Plaintiffs do not and cannot make these kinds of allegations about Mitchell. *Id.* at 473. Instead, the Complaint makes clear that Mitchell was an officer of a separate entity, and there are no allegations that he even reviewed Trinity Industries's draft securities filings or had individual discussions with other defendants regarding these filings.

Finally, *Lee v. Active Power, Inc.,* 29 F. Supp. 3d 876 (W.D. Tex. 2014) is wholly inapplicable to the question of who can be the "ultimate maker" of a communication, as that case turned only on whether an employee's scienter can be imputed to his employer. In fact, the *Lee* court acknowledged that, in "[a]pplying *Janus* to this case, it may well be true [the third party adviser] did not 'make' the false statements." *Id.* at 883. But because that question was not before the court, it explicitly declined to rule on that issue. *Id.* & n.2. Here, Mitchell is not alleged to be an employee of Trinity Industries, the corporation alleged to have made the public statement on which Plaintiffs base their claims. As such, Plaintiffs' imputation argument falls flat.

Simply put, none of the cases Plaintiffs cite are factually similar to the sparse allegations regarding a single quote by Mitchell. Indeed, Plaintiffs' allegations are similar to those in *In re BP p.l.c. Sec. Litig.*, No. 4:10-MD-2185, 2016 WL 29300, at *9 (S.D. Tex. Jan. 4, 2016). In *In*

*re BP*, the court held that the law does not support imputing non-employee statements to a corporate defendant and dismissed Rule 10b-5 claims against a subsidiary of BP because the alleged misrepresentations came from officers of BP (rather than the subsidiary).   (Mot. 3.) Likewise here, Mitchell is not the maker of any of the alleged misstatements, and the claims against him must be dismissed.

      B.     *Plaintiffs cannot raise new arguments outside the Complaint in their Response.*

In an attempt to escape the holding in *Janus*, Plaintiffs improperly argue for the first time (in a footnote) that Mitchell's employment status "raises factual questions" and suggest that Trinity Highway is the alter ego of Trinity Industries such that Mitchell is responsible for Trinity Industries's statements.   (Resp. 33 n.30.) ("Defendants' argument that Mitchell is not an employee of Trinity Industries is specious . . . .")).  But this new stray "alter ego" argument is not found in Plaintiffs' Complaint and there are no factual allegations to support finding alter ego liability.   The words "alter ego" or their equivalent never appear in the Complaint.   It is well established that Plaintiffs cannot avoid a motion to dismiss by trying to assert new theories such as an alter ego theory in their response for the first time.  *See Skidmore Energy, Inc. v. KPMG, LLP*, No. 03-2138, 2004 WL 3019097, at *5 (N.D. Tex. Dec. 28, 2004) (rejecting plaintiffs' arguments regarding alter ego, raised for first time in response to a motion to dismiss, because "[p]laintiffs may not amend their Complaint through briefs submitted in response to [defendant's] motion to dismiss."); *see also In re Baker Hughes Secs. Litig.*, 136 F. Supp. 2d 630, 646 (S.D. Tex. 2001) (granting defendants' motion to dismiss securities case and rejecting arguments raised by plaintiffs in their response because "it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss") (quotation marks and citation omitted), *aff'd*, 292 F.3d 424 (5th Cir. 2002).

**2.     The one quote purportedly attributed to Mitchell is a true, forward-looking statement of opinion protected under the PSLRA.**

Plaintiffs' claims against Mitchell fail for a second, independent reason. Even if Plaintiffs sufficiently alleged that Mitchell was the maker, which they did not, the claims against him still fail because the sole statement purportedly attributed to Mitchell is a true, non-actionable opinion and forward looking:

> "In light of FHWA's request, the right thing to do is to stop shipping the product until the additional testing has been completed," said Gregg Mitchell, President, Trinity Highway Products, LLC. "We have confidence in the ET-Plus® System as designed and crash tested by Texas A&M Transportation Institute. It has met all tests previously requested by FHWA. We take the safety of the products we manufacture very seriously."

(App. 4.) Taken as whole, the quotation in the press release is a clear expression of an opinion and belief, which is not actionable under the PSLRA. *See e.g.*, *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 129 F. Supp. 3d 48, 72 (S.D.N.Y. 2015). And even if the quotation is examined sentence by sentence, none of the sentences are actionable:

| | |
|---|---|
| *"In light of FHWA's request, the right thing to do is to stop shipping the product until the additional testing has been completed."* | The press release's reference to the "right thing to do" signals the expression of an opinion and a belief, which is not actionable under the PSLRA. *See e.g.*, *City of Westland Police & Fire Ret. Sys.*, 129 F. Supp. 3d at 72. Moreover, the announcement that shipments would be halted is uncontested truth. *See In re Capstead Mortg. Corp. Sec. Litig.*, 258 F. Supp. 2d 533, 563 (N.D. Tex. 2003) ("Plaintiffs allege no facts which demonstrate that . . . Defendants did not believe the statements to be true when made."). |
| *"We have confidence in the ET-Plus System as designed and crash tested by Texas A&M Transportation Institute."* | The statement's expression of "confidence" points to the future, and forward-looking statements are not actionable when accompanied by meaningful cautionary language, which the press release contained. *See* 15 U.S.C. § 78u-5(c)(1)(A); *Southland Sec. Corp. v. INSpire Ins. Sols.*, 365 F.3d 353, 371-72 (5th Cir. 2004) (describing the safe harbor rule for forward-looking statements that are "accompanied by meaningful cautionary statements."). Moreover, Plaintiffs' own allegations establish the veracity of the reference to crash testing being done by Texas A&M |

| | |
|---|---|
| | Transportation Institute.  (*See* Compl. ¶¶ 53, 57). |
| *"[The ET-Plus] has met all tests previously required by the FHWA."* | This statement is true and cannot be actionable.  *See In re Capstead*, 258 F. Supp. at 563.  The ET-Plus has unquestionably met all of the tests requested by the FHWA, and the FHWA has reconfirmed time and again that it remains eligible for reimbursement today, even after an adverse jury verdict which supposedly uncovered that Trinity defrauded the FHWA.  *See History of the ET-Plus*, FHWA, https://www.fhwa.dot.gov/guardrailsafety/history.cfm (last updated Mar. 28, 2016) ("FHWA has reaffirmed that the ET-Plus meets the appropriate NCHRP criteria and has been and continues to be eligible for Federal-aid reimbursement, until December 31, 2017 . . . .").  Moreover, given that the governing NCHRP Report 350 standards contemplate the exercise of "good engineering judgment" to determine compliance, Trinity's statements about product compliance were also a matter of judgment, and as such Plaintiffs' allegations fail under the standard set forth in *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*. 135 S. Ct. 1318, 1325-56 (2015). |
| *"We take the safety of products we manufacture very seriously."* | This statement clearly describes Mitchell's opinion and belief, as signaled by his use of subjective descriptors, such as "very seriously," and it also constitutes a general statement that cannot be a basis for liability.  *See City of Westland Police & Fire Ret. Sys.*, 129 F. Supp. at 72 (determining that defendant's characterization of its underwriting as "solid" and "disciplined" "as well as other such representations are not actionable" because "they are too general to cause a reasonable investor to rely on them.") (quotation marks and footnote omitted); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 869 (5th Cir. 2003). |

3.     **Plaintiffs fail to allege scienter with particularity as to Mitchell.**

Finally, Plaintiffs' Response does not overcome their failure to plead scienter with particularity as to Mitchell.  The law is clear that mere allegations of knowledge, without more, are insufficient to raise a strong inference of scienter.  *See, e.g., Owens v. Jastrow*, 789 F.3d 529, 538-40 (5th Cir. 2015) (allegations of defendants' mere knowledge of company undercapitalization, without more, are insufficient to raise a strong inference of scienter).

Moreover, Plaintiffs impermissibly lump Mitchell and the other individual defendants together when attempting to plead scienter.  But the Fifth Circuit has explicitly rejected such group pleading for scienter because of the "PSLRA's specific requirement that the untrue statements or omissions be set forth with particularity *as to 'the defendant' and that scienter be pleaded with regard to 'each act or omission' sufficient to give 'rise to a strong inference that the defendant acted with the required state of mind.*"  *Southland*, 365 F.3d at 364-65 (emphasis added) (noting further that the PSLRA requires plaintiffs to "distinguish among those they sue and enlightened each defendant as to his or her particular part in the alleged fraud").  The *Southland* court then spent pages analyzing each alleged misstatement and examining whether it set forth the "who, what, when, and where" required to plead scienter with particularity.  *See, e.g.*, *id.* at 376;[1]  *see also Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 432 (5th Cir. 2002) ("A pleading of scienter may not rest on the inference that defendants must have been aware of the misstatement based on their positions within the company.").  In sum, the requirements for pleading scienter are "rigorous" and "severe," and Plaintiffs' allegations fall short of meeting this exacting standard.  *See R2 Invs. LDC v. Phillips*, 401 F.3d 638, 643 (5th Cir. 2005).

First, Plaintiffs' allegations that Mitchell and Wallace and "a group of Trinity senior executives" attended meetings where issues regarding the ET-Plus and the Harman Case were discussed is not enough to establish scienter.  (Resp. 37, 42.)  *See In re BP p.l.c. Sec. Litig.*, 922

---

[1] Plaintiffs attempt to rely on *Lormand v. US Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009) for the proposition that scienter can be inferred from "all of the facts alleged, taken collectively."  *Id.* at 251.  Plaintiffs misread this case, which dealt with highly particularized allegations about the direct knowledge of the defendants.  Further, to the extent *Lormand* and *Southland* are in conflict, it is *Southland* that controls.  *See United States v. Sester*, 607 F.3d 128, 131 (5th Cir. 2010) ("It is a firm rule of this circuit that in the absence of an intervening contrary or superseding decision by this court sitting en banc or by the United States Supreme Court, a panel cannot overrule a prior panel's decision."), *aff'd*, 132 S. Ct. 1463 (2012).

F. Supp. 2d 600, 632 & n.31 (S.D. Tex. 2013) (an officer's involvement cannot be presumed "simply through his presence at a meeting for an unknown purpose").

Second, Plaintiffs claim a conspiracy to hide the 2005 modifications and cite to letters Mitchell sent to customers and transportation agencies discussing the 2005 modification to the ET-Plus in an effort to show scienter.  (Resp. 43.) These letters, which provide broad disclosures of the modifications to customers and transportation authorities, are actually the opposite of a cover-up.   These letters, which Plaintiffs quote from in the Complaint and Response, demonstrate an effort to provide information about the modifications and undermine any claim of scienter.  (*See* Compl. ¶ 114; Resp. 43.)

The remainder of Plaintiffs' allegations, both in the Complaint and the Response, merely rehash events related to previous lawsuits filed by Trinity Industries against Harman and the Harman Case itself, none of which address Mitchell's alleged scienter.  What the law requires— but the Plaintiffs never achieve—are allegations of "severe recklessness" necessary to satisfy the scienter requirement.  Because of this short-coming alone, the Complaint should be dismissed as to Mitchell.

### CONCLUSION AND REQUESTED RELIEF

As set out in the Motion, Plaintiffs' allegations against Mitchell fail to meet the standards for properly pleading securities fraud under § 10(b) and Rule 10b-5.   Mitchell was not the "maker" of the statement in the October 24, 2014 press release because he did not have the ultimate authority over its content or issuance, as required by established Supreme Court precedent.   Moreover, even if he were the "maker," the quotation attributed to Mitchell is not actionable because it was a true, forward-looking statement of opinion.   Finally, Plaintiffs fail to allege facts establishing that Mitchell had the requisite scienter.

For all these reasons, as well as those in Defendants' motion to dismiss and memorandum in support thereof, which Mitchell incorporates, Defendant Mitchell respectfully requests that the Court dismiss the Complaint against him with prejudice.

Dated:  November 18, 2016

Respectfully submitted,


s/ Yvette Ostolaza                              s/ Joshua L. Hedrick
Yvette Ostolaza                                 Joshua L. Hedrick
State Bar No. 00784703                          State Bar No. 24061123
yvette.ostolaza@sidley.com                      josh@hedrickkring.com
Angela C. Zambrano
State Bar No. 24003157
angela.zambrano@sidley.com
Michelle Hartmann
State Bar No. 24032402
mhartmann@sidley.com

SIDLEY AUSTIN LLP                               HEDRICK KRING, PLLC

2021 McKinney Avenue, Suite 2000               1700 Pacific Avenue, Suite 4650
Dallas, Texas 75201                             Dallas, Texas 75201
Ph: (214) 981-3300                              Phone: (214) 880-9605
Fax: (214) 981-3400                             Fax: (214) 481-1844

*Attorneys for Defendants*                      *Attorney for Defendant*
*Trinity Industries, Inc., Timothy R.*          *Trinity Industries, Inc.*
*Wallace, James E. Perry, and*
*Gregory B. Mitchell*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 18, 2016, I electronically filed the above reply in response to Plaintiffs' opposition to Defendants' motion to dismiss Plaintiffs' Consolidated Amended Complaint and memorandum in support thereof using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

s/ Yvette Ostolaza         <br>Yvette Ostolaza